ORIGINAL

IN THE UNITED STATES DISTRICT COUT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

JUN 1 4 2016
3:54

CLERK, U.S. DISTRICT COURT
By _____
　　　　　Deputy

| | | |
|---|---|---|
| LONNY ACKER, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | CIVIL ACTION NO. 4:15-CV-0706-A |
| GENERAL MOTORS LLC, | § | |
| | § | |
| Defendant. | § | |

---

## PLAINTIFF LONNY ACKER'S BRIEF IN SUPPORT OF RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

---

**Robert J. Wiley**
Texas Bar No. 24013750
*Board Certified – Labor and Employment Law –*
*Texas Board of Legal Specialization*
**Allison C. Reppond**
Texas Bar No. 24085733

**ROB WILEY, P.C.**
1825 Market Center Blvd., Ste. 385
Dallas, Texas 75207
Telephone: (214) 528-6500
Facsimile: (214) 528-6511
areppond@robwiley.com
www.robwiley.com

**ATTORNEYS FOR PLAINTIFF**

## TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................... i

TABLE OF AUTHORITIES ............................................................................. iii

I.    SUMMARY OF THE ARGUMENT ................................................ 1

II.   EVIDENCE PRESENTED ............................................................... 2

III.  STATEMENT OF FACTS ................................................................ 3

    A.  *GM hires Mr. Acker to work in its Arlington Assembly Plant.* ............... 3

    B.  *GM learns that Mr. Acker is diagnosed with the disability of acute iron deficiency anemia.* ............................................. 4

    C.  *GM receives Mr. Acker's first claim for FMLA leave.* ........................... 4

    D.  *GM's FMLA Leave process appears to be designed to violate the FMLA.* ................................................................................. 5

    E.  *GM receives additional leave requests from Mr. Acker.* ........................

    F.  *GM suspends Mr. Acker without pay because of his FMLA leave requests.* ............................................................................ 6

    G.  *GM suspends Mr. Acker without pay a second time because of his FMLA leave requests.* ...................................................... 7

    H.  *GM receives an additional request for FMLA leave from Mr. Acker.* ..................................................................................... 9

    I.  *GM suspends Mr. Acker for a third time without pay because of his FMLA leave requests.* ...................................................... 9

    J.  *GM threatens Mr. Acker with termination for requesting FMLA leave.* ............................................................................................ 10

    K.  *GM modifies its FMLA leave procedures after learning of Mr. Acker's claims.* ............................................................................. 12

IV.   ARGUMENTS AND AUTHORITIES ............................................. 12

    A.  *The summary judgment evidence establishes a genuine issue of fact concerning Mr. Acker's FMLA interference claim, as GM denied Mr. Acker FMLA leave despite Mr. Acker's qualifying for FMLA leave and providing sufficient notice to GM of his need for FMLA leave.* ........................................................... 12

1. GM received sufficient notice of Mr. Acker's intent to take FMLA leave for his own serious health condition, as Mr. Acker called into GM's automated 1-800 number and the automated 1-800 number of GM's FMLA administrator, as soon as practicable, to notify GM of his need for FMLA leave. .................................................................... 13

2. GM wrongfully denied several of Mr. Acker's FMLA leave requests, despite the fact that Mr. Acker provided sufficient notice of his intent to take FMLA leave. ............................ 19

3. GM's interference with and denial of Mr. Acker's exercise of his FMLA rights prejudiced Mr. Acker, as he was suspended from work and docked seven weeks of pay. ..................... 20

B. *The summary judgment evidence establishes a genuine issue of fact concerning Mr. Acker's FMLA and ADAAA retaliation claims, as GM subjected Mr. Acker to adverse employment actions, including several weeks of unpaid disciplinary layoff time, because of his exercise of his right to FMLA leave and his request for a reasonable accommodation for his disability in the form of FMLA leave.* .................................................................. 22

1. Mr. Acker engaged in protected activity under the ADAAA and the Texas Labor Code by requesting a reasonable accommodation for his disability in the form of medical leave. ............................................................ 25

2. GM subjected Mr. Acker to adverse employment actions when he was placed on approximately seven weeks of unpaid, disciplinary layoff time. ................................................................... 25

3. GM placed Mr. Acker on approximately seven weeks of unpaid, disciplinary layoff time because of his exercise of his FMLA rights and his request for a reasonable accommodation for his disability in the form of FMLA leave. .................................... 27

4.  The reason provided by GM for the adverse actions taken
against Mr. Acker are pretextual, as the sole justification
provided by GM for the disciplinary layoff periods
assessed against Mr. Acker is GM's claim that Mr. Acker
failed to comply with GM's call-in procedure, which disregards
Mr. Acker's timely and adequate notification
to GM of his need for FMLA leave. .................................................  28

C.  *A jury could find in Mr. Acker's favor on his disability
discrimination claims, as GM took adverse action against
him in the form of unpaid disciplinary layoff periods
because of his disability in violation of the
ADAAA and the TCHRA.* ......................................................................  28

D.  *Summary judgment is improper where, when viewing all evidence
and finding all inferences in Mr. Acker's favor, material factual
disputes exist.* .........................................................................................  30

V.   CONCLUSION ...................................................................................  32

# TABLE OF AUTHORITIES

Cases:

*Amburgey v. Cohart Refractories Corp., Inc,*
936 F.2d 805, 811 (5th Cir. 1991)) .................................................................................. 24

*Anderson v. Liberty Lobby, Inc.,*
477 U.S. 242 (1986) ........................................................................................................ 31

*Autozone, Inc. v. Reyes,*
272 S.W.3d 588, 592 (Tex. 2008) .............................................................................. 23, 29

*Baker v. Am. Airlines, Inc.,*
430 F.3d 750 (5th Cir. 2005) .......................................................................................... 23

*Bauer v. Albermarle Corp.e,*
169 F.3d 962, 967 (5th Cir. 1999) .................................................................................. 24

*Breaux v. City of Garland,*
205 F.3d 150, 157 (5th Cir. 2000) .................................................................................. 25

*Brock-Chapman v. Nat'l Care Network, L.L.C.,*
No. 3:10-CV-454-B, 2013 WL 169177, (N.D. Tex. Jan. 16, 2013) ................................ 21

*Celotex Corp. v. Catrett,*
477 U.S. 317, 327 (1986) .......................................................................................... 30, 31

*De Hoyos v. Bristol Labs. Corp.,*
218 F. Supp. 2d 222, 226 (D.P.R. 2002) ........................................................................ 18

*E.E.O.C. v. Chevron Phillips Chem. Co., L.P.,*
570 F.3d 606, 621 (5th Cir. 2009) .................................................................................. 25

*Findeisen v. N.E. Indep. Sch. Dist.,*
749 F. 2d 234, 239 (5th Cir. 1984), *cert. denied*, 471 U.S. 1125 (1985) ........................ 30

*Furnco. Const. Co. v. Waters,*
438 U.S. 567, 577 (1978) ................................................................................................ 24

*Gibson v. Swiss Reinsurance Am. Corp.*,
   Civ. A. No. 99-cv-2929-G, slip op. at 9 (N.D. Tex. May 7, 2001)(Doc. No. 67) .......... 24

*Haire v. Bd. of Supervisors of La. State Univ. Agric. & Mech. Coll.*,
   719 F.3d 356, 367–68 (5th Cir. 2013) ........................................................................... 25

*Hall v. Smurfit-Stone Container Enter., Inc.*,
   Civ. A. No. 3:07-CV-0501-G, 2008 WL 3823252 (N.D. Tex. Aug. 14, 2008)............... 31

*Haynes v. Gernsbacher's, Inc.*,
   No. 4:01-CV-594-A, 2002 WL 1783905, (N.D. Tex. July 31, 2002)............................. 22

*Henderson v. Grand Prairie Indep. Sch. Dist.*,
   Civ. A. No. 4:12-CV-498-A, 2013 WL 4804300, (N.D. Tex. Sept. 6, 2013) ................. 13

*Holland v. Shinseki*,
   No. 3:10-CV-0908-B, 2012 WL 162333, (N.D. Tex. Jan. 18, 2012) ............................. 22, 23

*Hunt v. Rapides Healthcare Sys.*
   277 F.3d 757 (5th Cir. 2001) ........................................................................................ 22

*Lubke v. City of Arlington*,
   No. 4:02-CV-188-Y, 2003 WL 22466200, (N.D. Tex. Sept. 9, 2003) ............................ 18

*Mauder v. Metro. Transit Auth. of Harris Cnty.*,
   446 F.3d 574, 583 (5th Cir. 2006) ................................................................................. 23

*McGarity v. Mary Kay Cosmetics*,
   Civ. A. No. 3:96-CV-3413-R, 1998 WL 50460 (N.D. Tex. Jan. 20, 1998) ................... 25

*M.D. Anderson Hosp. & Tumor Inst. v. Willrich*,
   28 S.W.3d 22, 24 (Tex. 2000)......................................................................................... 23, 29

*Mora v. Chem-Tronics, Inc.*,
   16 F. Supp. 2d 1192, (S.D. Cal. 1998).................................................................. 16–17, 18

*Neely v. PSSEG Tex., Ltd. P'ship*,
   735 F.3d 242, 245 (5th Cir. 2013) ................................................................................. 28

*Poller v. Columbia Broadcasting Sys., Inc.,*
368 U.S. 464 (1962) ........................................................................................... 32

*Quantum Chem. Corp. v. Toennies,*
47 S.W.3d 473, 476 (Tex. 2001) ...................................................................... 23, 29

*Reeves v. Sanderson Plumbing Products, Inc.,*
530 U.S. 133 (2000) ........................................................................................... 31

*Saenz v. Harlingen Medical Center, L.P.,*
613 F.3d 576 (5th Cir. 2010) ......................................................................... 15–16

*Schaub v. Tech Data Corp.,*
No. 4:00-CV-0357-A, 2001 WL 238223 (N.D. Tex. Mar. 8, 2001) ................. 22, 24

*Schirle v. Sokudo USA, L.L.C.,*
484 F. App'x 893, 899 (5th Cir. 2012) ............................................................... 27

*St. Mary's Honor Ctr. v. Hicks,*
509 U.S. 502 (1993) ........................................................................................... 32

*Tabatchnik v. Cont'l Airlines,*
262 F. App'x 674, 676 (5th Cir. 2008) ............................................................ 23, 25

*Tex. Dep't Comm. Affairs v. Burdine,*
450 U.S. 248 (1981) ........................................................................................... 24

*Thornbrough v. Columbus & Greenville R.R. Co.,*
760 F.2d 633, 640 (5th Cir. 1985) ...................................................................... 32

*Villegas v. Albertsons, LLC,*
96 F. Supp. 3d 624, 632 (W.D. Tex. 2015) ......................................................... 15

**Statues:**
29 U.S.C. § 1612 (2012) ................................................................................. 12–13

29 U.S.C. § 1614 (2012) .................................................................................... 13

29 U.S.C. § 1615 (2012) .................................................................................... 13

42 U.S.C. § 12203 (2012) .................................................................................................... 22–23

42 U.S.C. § 12112 (2012) .................................................................................................... 28

**Regulations**
29 C.F.R. § 825.302 (2013) ................................................................................................. 13, 17

29 C.F.R. § 825.303 (2013) ................................................................................................. *passim*

**Rules of Evidence and Procedure:**
Fed. R. Civ. P. 56 ............................................................................................................... 30, 31

N.D. Tex. Civ. R. 56.4 ........................................................................................................ 1

IN THE UNITED STATES DISTRICT COUT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| LONNY ACKER, | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| v. | § | |
| | § | CIVIL ACTION NO. 4:15-CV-0706-A |
| GENERAL MOTORS LLC, | § | |
| | § | |
| **Defendant.** | § | |

## PLAINTIFF LONNY ACKER'S BRIEF IN SUPPORT OF RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

TO THE HONORABLE JOHN H. MCBRYDE, UNITED STATES DISTRICT JUDGE:

NOW COMES Plaintiff Lonny Acker and files Plaintiff's Brief in Support of Response Defendant's Motion for Summary Judgment, filed contemporaneously with his Response to Defendant's Motion for Summary Judgment and Appendix in Support pursuant to Local Rule 56.4. For the reasons set forth herein and in his Response to Defendant's Motion for Summary Judgment, Mr. Acker respectfully asks the Court to deny Defendant's Motion for Summary Judgment in its entirety.

### I.
### SUMMARY OF THE ARGUMENT

GM suspended Lonny Acker for seven weeks without pay as a punishment for taking FMLA leave. This is an error of GM's own creation. GM requires employees to call in to its own 1-800 phone line to request FMLA leave and subsequently call Sedgwick, a third party, to make a second request for FMLA leave. During the time period at issue, Sedgwick's phone line

begins with an option allowing callers to initiate a new request for FMLA leave. The second option provided by Sedgwick concerns adding to an existing leave request.

Mr. Acker duly called the GM line as well as the Sedgwick line and selected the first menu option. Mr. Acker was suspended from work for a total of seven weeks, resulting in this lawsuit, because GM claims Mr. Acker failed to provide timely notice of his intent to take FMLA leave. Mr. Acker regularly provided as much notice as possible before requesting FMLA leave. Ultimately, GM claims that Mr. Acker either failed to comply with GM's complex FMLA leave procedure or failed to select the proper menu option.

The FMLA has its own notice requirement, which Mr. Acker clearly satisfied. Because Mr. Acker met all of the legal requirements for FMLA leave, but was suspended by GM for taking such leave, a genuine issue of material fact exists concerning his claim for interference and retaliation under the FMLA. Mr. Acker also raises a genuine issue of material fact concerning his disability discrimination and retaliation claims, as Mr. Acker was punished for requesting medical leave as a reasonable accommodation for his disability. Accordingly, Defendant's Motion for Summary Judgment should be denied. Mr. Acker's claims are ripe for consideration by a jury, as fact issues abound in this case.

## II.
## EVIDENCE PRESENTED

Plaintiff files his Appendix in Support of his Response to Defendant's Motion for Summary Judgment and Brief in Support contemporaneously with his Response to Defendant's Motion for Summary Judgment and Brief in Support. In compliance with this Court's October 30, 2015 Status Report Order, Mr. Acker's Appendix in Support will be filed in a separate volume, bearing consecutive page numbers and appropriate index tabs so the Court can readily

locate each item. Mr. Acker's Appendix in Support is spiral-bound on the side contains a table of

contents giving the description of each item contained therein along with the tab and page

number where the item can be found. The following are included in Mr. Acker's Appendix:

*Exhibit A* – Excerpts from Deposition of Lonny Acker ................................................... App. 001

*Exhibit B* – December 9, 2014 Report of Disciplinary Action ......................................... App. 084

*Exhibit C* – December 16, 2014 Report of Disciplinary Action ....................................... App. 086

*Exhibit D* – December 18, 2014 Report of Disciplinary Action ....................................... App. 088

*Exhibit E* – January 14, 2015 Report of Disciplinary Action ........................................... App. 090

*Exhibit F* – Memorandum of Understanding–Special Procedure for Attendance ............ App. 092

*Exhibit G* – November 13, 2014 Notice of FMLA Leave Claim ...................................... App. 101

*Exhibit H* – December 3, 2014 Notice of Conditional Approval ...................................... App. 112

*Exhibit I* – December 9, 2014 Notice of Approval of Intermittent Leave ........................ App. 117

*Exhibit J* – Plaintiff's Original Complaint ...................................................................... App. 122

*Exhibit K* – Executed EEOC Charge .............................................................................. App. 137

*Exhibit L* – May 12, 2016 Notice of Change in FMLA Call-In Procedure ...................... App. 142

*Exhibit M* – Mr. Acker's Cell Phone Call Log ................................................................ App. 146

*Exhibit N* – Employee Corporate History ....................................................................... App. 150

## III.
## STATEMENT OF FACTS

**A.** *GM hires Mr. Acker to work in its Arlington Assembly Plant.*

Lonny Acker has been an employee of Defendant General Motors LLC ("Defendant" or

"GM") since approximately October 9, 2000. *Exhibit A*, Acker Deposition at 21:6–9, 22:5–24:1

(App. 014–017); *Exhibit N*, Employee Corporate History at App. 151. Mr. Acker's employment

with GM began in Kokomo, Indiana, and in June 2014, Mr. Acker accepted an opportunity to work for GM in Texas at its Arlington Assembly Plant. *Exhibit A*, Acker Deposition at 21:6–9, 22:5–24:1 (App. 014–017); *Exhibit N*, Employee Corporate History at App. 151. Throughout his employment with GM, Mr. Acker has consistently given his best efforts to GM. *Exhibit J*, Plaintiff's Original Complaint at App. 125; *Exhibit K*, Executed EEOC Charge at App. 143–145. For the majority of his time at GM's Arlington Assembly Plant, Mr. Acker has worked on the third shift, the latest shift for employees at the Arlington Assembly Plant. *Exhibit A*, Acker Deposition at 25:12 – 26:3 (App. 018–019).

**B.** *GM learns that Mr. Acker is diagnosed with the disability of acute iron deficiency anemia.*

Shortly after his employment at GM's Arlington Assembly Plant began, Mr. Acker began to experience serious health issues, including blackouts, grayouts, heart palpitations, and extreme fatigue. *Exhibit A*, Acker Deposition at 9:14–12:2 (App. 010–013); *Exhibit J*, Plaintiff's Original Complaint at App. 126. Mr. Acker's physician ultimately diagnosed Mr. Acker with acute iron-deficiency anemia. *Exhibit A*, Acker Deposition at 9:14–12:2 (App. 010–013); *Exhibit J*, Plaintiff's Original Complaint at App. 126. Mr. Acker's physician certified Mr. Acker for intermittent medical leave under the Family and Medical Leave Act, as the onset of Mr. Acker's condition can become acute with little to no warning, requiring Mr. Acker to take time away from work to get well. *Exhibit A*, Acker Deposition at 30:6–33:9, 102:17–105:2 (App. 023–026, 072–075).

**C.** *GM receives Mr. Acker's first claim for FMLA Leave.*

After receiving the diagnosis of acute iron deficiency anemia from his physician, Mr. Acker made his first request for FMLA leave as a reasonable accommodation for his disability to

GM in November 2014 when his condition once again entered the acute phase. *Exhibit A*, Acker Deposition at 28:17–29:6, 30:6–33:9 (App. 021–026, 072–075); *Exhibit G*, November 12, 2014 Notice of FMLA Claim at App. 102–109. Mr. Acker called GM as soon as practicable to notify GM that his condition had become acute and that he intended to take FMLA leave. *Exhibit A*, Acker Deposition at 28:17–29:6, 30:6–33:9, 102:25–103:4, 107:19–23 (App. 021–026, 072–075, 077); *Exhibit M*, Acker Call Log at App. 146–149.

**D.** *GM's FMLA leave process appears to be designed to violate the FMLA.*

GM's FMLA leave request process for employees of its Arlington Assembly Plant is complicated and burdensome, particularly for an employee who is experiencing medical issues at the same time. *Exhibit A*, Acker Deposition at 103:5–104:3 (App. 103–104); *Exhibit G*, November 12, 2014 Notice of FMLA Claim at App. 107–108. GM's policy requires the employee to first call a 1-800 number for GM employees who are requesting FMLA leave. *Exhibit A*, Acker Deposition at 103:5–104:3 (App. 103–104); *Exhibit G*, November 12, 2014 Notice of FMLA Claim at App. 107–108. According to GM's policy, the employee is to call the number at least 30 minutes prior to his or her shift in cases where the need for FMLA is sudden and/or unexpected. *Exhibit A*, Acker Deposition at 31:4–33:7, 103:5–104:3 (App. 024–026, 103–104); *Exhibit F*, Memorandum of Understanding – Special Procedures for Attendance at App. 093–100; *Exhibit G*, November 12, 2014 Notice of FMLA Claim at App. 107–108.

However, GM also requires its employees to call its FMLA leave administrator, Sedgwick, to request FMLA leave. *Exhibit A*, Acker Deposition at 103:5–104:3 (App. 103–104); *Exhibit G*, November 12, 2014 Notice of FMLA Claim at App. 107–108. Sedgwick is responsible for obtaining all medical documentation from GM employees and processing all requests for FMLA leave. *Exhibit A*, Acker Deposition at 103:5–104:3 (App. 103–104); *Exhibit*

*G*, November 12, 2014 Notice of FMLA Claim at App. 107–108. Sedgwick then makes its determination as to whether the employee is qualified for FMLA leave, which GM accepts and adopts without question. *Exhibit A*, Acker Deposition at 75:16–76:21 (App. 062–063). The process with Sedgwick begins by calling a separate 1-800 number and selecting from an automated menu of prompts. *Exhibit A*, Acker Deposition at 31:4–33:7, 103:5–104:3 (App. 024–026, 073–074); *Exhibit G*, November 12, 2014 Notice of FMLA Claim at App. 107–108.

At the time Mr. Acker requested FMLA leave in November 2014, the first option on Sedgwick's 1-800 menu offered GM employees the option to initiate a new claim for FMLA leave. *Exhibit A*, Acker Deposition at 66:8–67:18 (App. 053–054). The second menu option stated that it was to be used to add additional time to a leave request leave request. *Exhibit A*, Acker Deposition at 66:8–67:18 (App. 053–054).

Mr. Acker's initial request for leave covered November 12–14, 2014. When Mr. Acker called to request FMLA leave, he recalled calling both GM's 1-800 number and Sedgwick's 1-800 number. *Exhibit A*, Acker Deposition at 103:5–104:3, 105:18–106:4 (App. 073–076). Mr. Acker selected Option #1 on Sedgwick's phone menu to initiate a new claim for FMLA leave. Mr. Acker returned to work for his next scheduled shift after his period of intermittent FMLA leave. *Exhibit A*, Acker Deposition at 66:8–67:18 (App. 053–054).

E.     *GM receives additional leave requests from Mr. Acker.*

Mr. Acker also requested FMLA leave on or around November 22–23, 2014 and on or about December 6–8, 2014. *Exhibit A*, Acker Deposition at 54:14–16, 57:8–10, 105:18–106:11 (App.041, 044, 075–076); *Exhibit K*, Executed EEOC Charge at App. 143–145. Mr. Acker recalls calling both GM's 1-800 number and Sedgwick's 1-800 number to request FMLA leave. *Exhibit K*, Executed EEOC Charge at App. 143–145; *Exhibit M*, Acker Call Log at App. 146–

149 Mr. Acker once again selected Option #1 when calling to request FMLA leave with Sedgwick for all but one of his leave requests. Mr. Acker actually selected Option #2 on Sedgwick's 1-800 menu when requesting leave for December 7, 2014. *Exhibit K*, Executed EEOC Charge at App. 143–145. After each period of leave, Mr. Acker returned to work for his next scheduled shift. *Exhibit K*, Executed EEOC Charge at App. 143–145.

F.   *GM suspends Mr. Acker without pay because of his FMLA leave requests.*

When Mr. Acker returned to work on December 9, 2014, Mr. Acker learned that Sedgwick had denied all but one of his FMLA leave requests and that GM had adopted Sedgwick's decision. *Exhibit A*, Acker Deposition at 46:8 – 59:16 (App. 033–046); *Exhibit B*, December 9, 2014 Report of Disciplinary Action at App. 084. Mr. Acker was shocked to learn the GM and Sedgwick claimed they had no record of his calls to Sedgwick or of his FMLA requests. *Exhibit A*, Acker Deposition at 46:8–59:16 (App. 033–046); *Exhibit B*, December 9, 2014 Report of Disciplinary Action at App. 084. The only leave request of Mr. Acker's that was granted was his leave request from December 7, 2014. *Exhibit A*, Acker Deposition at 46:8 – 59:16 (App. 033–046). Mr. Acker was told that he would be placed on unpaid disciplinary layoff for two weeks as a result of his absences from November 12–14, all for which he had requested FMLA leave. *Exhibit B*, December 9, 2014 Report of Disciplinary Action at App. 084.

Mr. Acker called Sedgwick to inquire into his leave requests and was initially told by a Sedgwick representative that Sedgwick had no record of his leave requests. *Exhibit A*, Acker Deposition at 49:20–51:1 (App. 036–038). Mr. Acker later learned that a Sedgwick representative had entered his leave request for the November 12–14, 2014 leave period but that his request had not bee processed or submitted to GM. *Exhibit A*, Acker Deposition at 49:20–

51:1 (App. 036–038). Sedgwick claimed it had no notice of Mr. Acker's leave requests from November 22–23, December 6, or December 8, 2014. *Exhibit A*, Acker Deposition at 46:8–59:16 (App. 033–046). Mr. Acker later learned from Sedgwick that he had been approved for both continuous and intermittent FMLA leave. *Exhibit H*, December 3, 2014 Notice of Conditional Approval at App. 113–116; *Exhibit I*, December 9, 2014 Notice of Approval of Intermittent Leave at App. 118–121.

Sedgwick ultimately acknowledged that it failed to timely submit Mr. Acker's FMLA approval paperwork to GM for the November 12–14 leave period. *Exhibit A*, Acker Deposition at 49:20–51:1 (App. 036–038). GM told Mr. Acker that he could return to work one week into his two-week disciplinary leave period but that the one-week disciplinary period would stand, as GM claimed Mr. Acker's call for FMLA leave fell outside of the 30-minute window preceding his November 14, 2014 shift. *Exhibit A*, Acker Deposition at 49:20–51:1 (App. 036–038). The write-up previously issued to Mr. Acker on December 9, 2014 was amended to include the allegation that Mr. Acker had not timely called in to request FMLA leave on November 14, 2014. *Exhibit A*, Acker Deposition at 49:20–51:1 (App. 036–038); *Exhibit C*, December 16, 2014 Report of Disciplinary Action at App. 088. Mr. Acker had not previously been told that GM alleged he had called in outside of the 30-minute call-in window set by GM. *Exhibit A*, Acker Deposition at 49:20–51:1 (App. 036–038).

Mr. Acker returned to work on December 17, 2014 after serving one-week of unpaid disciplinary layoff, for which Mr. Acker received no compensation. *Exhibit A*, Acker Deposition at 82:1–86:25, 106:15–107:9 (App. 067–071, 076–077); *Exhibit J*, Plaintiff's Original Complaint at App. 129; *Exhibit K*, Executed EEOC Charge at App. 143–145.

G.   *GM suspends Mr. Acker without pay a second time because of his FMLA leave requests.*

On December 19, 2014, just two days after Mr. Acker's return to work from his previous disciplinary layoff period, GM informed Mr. Acker that he would receive another two-weeks of disciplinary layoff for his November 22–23 FMLA leave requests. *Exhibit A*, Acker Deposition at 46:8–59:16 (App. 033–046); *Exhibit D*, December 18, 2014 Report of Disciplinary Action; *Exhibit J*, Plaintiff's Original Complaint at App. 129; *Exhibit K*, Executed EEOC Charge at App. 143–145. GM claimed that Sedgwick had failed to send paperwork approving Mr. Acker's FMLA leave for these dates. *Exhibit A*, Acker Deposition at 46:8–59:16 (App. 033–046); *Exhibit J*, Plaintiff's Original Complaint at App. 129; *Exhibit K*, Executed EEOC Charge at App. 143–145. Mr. Acker served yet another period of disciplinary layoff and went two more weeks without pay. *Exhibit A*, Acker Deposition at 82:1–86:25, 106:15–107:9 (App. 067–071, 076–077); *Exhibit J*, Plaintiff's Original Complaint at App. 130; *Exhibit K*, Executed EEOC Charge at App. 143–145. Mr. Acker returned to work after the two-week period ended and continued performing his job duties. *Exhibit J*, Plaintiff's Original Complaint at App. 130; *Exhibit K*, Executed EEOC Charge at App. 143–145.

H.   *GM Receives an Additional Request for FMLA Leave from Mr. Acker.*

After a particularly difficult shift with significant overtime on January 12, 2015, Mr. Acker suffered an acute anemic flare-up, requiring Mr. Acker to request FMLA leave for January 13, 2015. *Exhibit J*, Plaintiff's Original Complaint at App. 130; *Exhibit K*, Executed EEOC Charge at App. 143–145. Mr. Acker recalls calling both GM's 1-800 number and Sedgwick's 1-800 number to request FMLA leave for January 13, 2014. *Exhibit J*, Plaintiff's Original Complaint at App. 130; *Exhibit K*, Executed EEOC Charge at App. 143–145. Mr. Acker

returned to work on January 14, 2014. *Exhibit J*, Plaintiff's Original Complaint at App. 130; *Exhibit K*, Executed EEOC Charge at App. 143–145.

I.    *GM Suspends Mr. Acker for a Third Time Without Pay Because of His FMLA Leave Requests.*

At the end of his January 14, 2014 shift, Mr. Acker was told to speak to GM's Labor Relations Department. *Exhibit A*, Acker Deposition at 46:8–59:16 (App. 033–046); *Exhibit J*, Plaintiff's Original Complaint at App. 130; *Exhibit K*, Executed EEOC Charge at App. 143–145. Mr. Acker was informed in this meeting that he would be put on yet another period of disciplinary leave as a result of his December 8, 2014 request for leave. *Exhibit A*, Acker Deposition at 46:8–59:16 (App. 033–046); *Exhibit E*, January 14, 2015 Report of Disciplinary Action at App. 090; *Exhibit J*, Plaintiff's Original Complaint at App. 130; *Exhibit K*, Executed EEOC Charge at App. 143–145. GM informed Mr. Acker that this period of disciplinary leave would be thirty days in duration. *Exhibit A*, Acker Deposition at 46:8–59:16 (App. 033–046); *Exhibit E*, January 14, 2015 Report of Disciplinary Action at App. 090; *Exhibit J*, Plaintiff's Original Complaint at App. 130; *Exhibit K*, Executed EEOC Charge at App. 143–145. Mr. Acker once again served his disciplinary leave period and went thirty additional days without pay. *Exhibit A*, Acker Deposition at 82:1–86:25, 106:15–107:9 (App. 067–071, 076–077); *Exhibit J*, Plaintiff's Original Complaint at App. 130; *Exhibit K*, Executed EEOC Charge at App. 143–145. Mr. Acker returned to work on February 13, 2015. *Exhibit J*, Plaintiff's Original Complaint at App. 130; *Exhibit K*, Executed EEOC Charge at App. 143–145.

J.    *GM Threatens Mr. Acker with Termination for Requesting FMLA Leave.*

Upon his return to work on February 13, 2015, Mr. Acker was informed that his leave request for FMLA leave for January 13, 2015 had been denied. *Exhibit A*, Acker Deposition at

46:8–59:16 (App. 033–046); *Exhibit J*, Plaintiff's Original Complaint at App. 130–131; *Exhibit K*, Executed EEOC Charge at App. 143–145. The reason given for the denial of this leave request was that Mr. Acker had not worked enough hours in the previous year to qualify for FMLA leave. *Exhibit J*, Plaintiff's Original Complaint at App. 130–131; *Exhibit K*, Executed EEOC Charge at App. 143–145. Mr. Acker was shocked by this reason, as it was completely false. *Exhibit J*, Plaintiff's Original Complaint at App. 130–131; *Exhibit K*, Executed EEOC Charge at App. 143–145. Additionally, Mr. Acker was shocked because he had recently been approved for intermittent FMLA leave. *Exhibit I*, December 9, 2014 Notice of Approval of Intermittent Leave at App. 118–121. Mr. Acker was warned during this meeting that if he had any additional "unexcused absences," he would be subject to termination. *Exhibit A*, Acker Deposition at 46:8–59:16 (App. 033–046); *Exhibit J*, Plaintiff's Original Complaint at App. 130–131; *Exhibit K*, Executed EEOC Charge at App. 143–145. This included FMLA leave requests that Sedgwick did not approve. *Exhibit A*, Acker Deposition at 46:8–59:16 (App. 033–046); *Exhibit J*, Plaintiff's Original Complaint at App. 130–131; *Exhibit K*, Executed EEOC Charge at App. 143–145. GM also refused to intervene to assist Mr. Acker in his issues with Sedgwick's mishandling of his FMLA leave requests, instead choosing to abide by Sedgwick's incorrect leave determinations. *Exhibit A*, Acker Deposition at 46:8–59:16 (App. 033–046); *Exhibit J*, Plaintiff's Original Complaint at App. 130; *Exhibit K*, Executed EEOC Charge at App. 143–145. Mr. Acker later received notice on February 20, 2015 that his leave request for January 13, 2015 would be approved. *Exhibit J*, Plaintiff's Original Complaint at App. 130–131; *Exhibit K*, Executed EEOC Charge at App. 143–145. Mr. Acker has also been asked numerous times to recertify for FMLA leave by GM and Sedgwick in retaliation for his FMLA leave requests and requests for reasonable accommodation, requiring Mr. Acker to take

additional, unnecessary, and costly trips to his physician's office to provide the same information already in GM's and Sedgwick's possession. *Exhibit A*, Acker Deposition at 46:8–59:16, 107:10 – 107:18 (App. 033–046).

K.    *GM Modifies Its FMLA Leave Procedures After Learning of Mr. Acker's Claims.*

Interestingly, since Mr. Acker brought claims against GM for FMLA interference and retaliation and disability discrimination and retaliation, GM and Sedgwick have changed their FMLA call-in procedure on two separate occasions. *Exhibit A*, Acker Deposition at 66:8–67:18 (App. 053–054); *Exhibit L*, May 12, 2016 Notice of Change in FMLA Call-In Procedure at App. 142–145.  First, Sedgwick's menu options were changed to clarify the purpose of each menu option. *Exhibit A*, Acker Deposition at 66:8–67:18 (App. 053–054).   More recently, the call-in procedure for GM employees to request FMLA leave has been changed completely to require only one call to GM to request leave, at which point the employee is transferred to Sedgwick to continue the FMLA leave process. *Exhibit L*, May 12, 2016 Notice of Change in FMLA Call-In Procedure at App. 142–145.  Both of these changes demonstrate the complexity of GM's call-in procedure during the time in which Mr. Acker was punished for requesting FMLA leave. *See Exhibit A*, Acker Deposition at 103:5–104:3 (App. 103–104); *Exhibit G*, November 12, 2014 Notice of FMLA Claim at App. 107–108.

IV.

ARGUMENTS AND AUTHORITIES

A.    *The summary judgment evidence establishes a genuine issue of fact concerning Mr. Acker's FMLA interference claim, as GM denied Mr. Acker FMLA leave despite Mr. Acker's qualifying for FMLA leave and providing sufficient notice to GM of his need for FMLA leave.*

The FMLA provides qualified employees with up to twelve weeks of protected medical leave to care for the employee's own serious health condition "that makes the employee unable

to perform the functions of the position of such employee.  29 U.S.C. § 1612(a)(1)(D) (2012). FMLA leave to care for one's own serious health condition may be taken on an intermittent basis. 29 U.S.C. § 1612(b)(1).  The FMLA creates a substantive entitlement to protected leave to care for a serious health condition and prohibits an employer from denying an employee FMLA benefits to which the employee is entitled or interfering with the employee's exercise of his right to FMLA leave.  29 U.S.C. §§ 1614–1615.

To establish that his employer has interfered with his rights under the FMLA, the plaintiff must show: 1) that he is an eligible employee under the FMLA; 2) that the defendant is an employer as defined by the FMLA; 3) that he gave notice of his intent to take leave as contemplated by the FMLA; 4) "that defendant interfered with, restrained, or denied plaintiff's exercise of FMLA rights and, if so, [5)] whether there is summary judgment evidence that [he] was prejudiced by such an interference." *Henderson v. Grand Prairie Indep. Sch. Dist.*, No. 4:12-CV-498-A, 2013 WL 4804300, at *7 (N.D. Tex. Sept. 6, 2013) (McBryde, J.). Based on a careful reading of GM's Motion for Summary Judgment, it appears Defendant does not dispute that Mr. Acker meets the first two elements.

1.  **GM received sufficient notice of Mr. Acker's intent to take FMLA leave for his own serious health condition, as Mr. Acker called into GM's automated 1-800 number and the automated 1-800 number of GM's FMLA administrator, as soon as practicable, to notify GM of his need for FMLA leave.**

The FMLA recognizes that an employee's need for leave may be sudden and unexpected and, under such circumstances, the employee simply needs to give notice to the employer of his need for FMLA leave "as soon as practicable." 29 C.F.R. § 825.302(a)–(b)(2013), 825.303(a)–(b).  "As soon as practicable means as soon as both possible and practical, taking into account all of the facts and circumstances in the individual case." 29 C.F.R. § 825.303(b).

To provide notice to his employer of his need for FMLA leave, "[a]n employee shall provide at least verbal notice sufficient to make the employer aware that the employee needs FMLA–qualifying leave, and the anticipated timing and duration of the leave." 29 C.F.R. § 825.303(b). Importantly, if the employer suspects that the employee is in need of FMLA leave, the employer has an affirmative obligation to inquire further to ensure that the employee received FMLA leave if he is entitled to it:

> When an employee seeks leave for the first time for a FMLA–qualifying reason, the employee need not expressly assert rights under the FMLA or even mention the FMLA. When an employee seeks leave due to a FMLA–qualifying reason, for which the employer has previously provided FMLA–protected leave, the employee must specifically reference the qualifying reason for leave or the need for FMLA leave. In all cases, the employer should inquire further of the employee if it is necessary to have more information about whether FMLA leave is being sought by the employee, and obtain the necessary details of the leave to be taken. In the case of medical conditions, the employer may find it necessary to inquire further to determine if the leave is because of a serious health condition and may request medical certification to support the need for such leave.

*Id.* While an employer can maintain its "usual and customary" notice policies and procedures, "FMLA–protected leave may not be delayed or denied where the employer's policy requires notice to be given sooner than set forth" in the FMLA regulations. *Id.* The FMLA provides two examples of a notice policy that would be considered acceptable: "For example, an employer may require employees to call a designated number or a specific individual to request leave." *Id.*

The FMLA also allows an employee to deviate from the employer's usual and customary notice policies and procedures under "unusual circumstances" where the employee seeks unforeseeable FMLA leave. 29 C.F.R. § 825.303(c). The FMLA regulations do not provide much in the way of explanation as to what would be considered "unusual circumstances" but seem to indicate that a sudden medical issue or medical emergency would fit within the "unusual circumstances" exception. *Id.* For example, an employee would qualify for FMLA leave if he

was in a coma, but the employee would certainly not be able to request leave if that coma was brought on by a horrific car accident.

"In general, the Fifth Circuit frowns upon strict enforcement of an employer's FMLA procedures where the employee gives adequate notice of his need for FMLA leave and does not affirmatively refuse to comply with the employer's procedures." *Villegas v. Albertsons, LLC*, 96 F. Supp. 3d 624, 632 (W.D. Tex. 2015) (citing *Saenz v. Harlingern Med. Ctr., L.P.*, 613 F.3d 576 (5th Cir. 2010)). In *Saenz v. Harlingen Medical Center, L.P.*, the Fifth Circuit reversed a district court's grant of summary judgment under facts analogous to the circumstances before the Court. 613 F.3d 576, 577–78 (5th Cir. 2010). In *Saenz*, the plaintiff suffered from a seizure condition and sought and obtained FMLA leave from her employer through her employer's FMLA leave administrator. *Id.* at 577. Due to an unforeseen worsening of the plaintiff's condition, the plaintiff required hospitalization. *Id.* at 577–78. The plaintiff's mother notified the employer of the issue but did not notify the employer's FMLA leave administrator. *Id.* at 578. The plaintiff was ultimately diagnosed with additional serious medical conditions and requested additional intermittent FMLA leave as a result from her employer's FMLA leave administrator. *Id.* However, the plaintiff was ultimately terminated because she failed to contact the employer's FMLA leave administrator within two days of her release from inpatient medical treatment. *Id.* at 579.

The *Saenz* Court recognized that "knowledge alone of [plaintiff's] employer's FMLA procedures does not justify holding her to a heightened standard," particularly where the plaintiff does not intentionally disregard the employer's policies and procedures. *Id.* at 582. The Court also recognized that:

> The FMLA requires only that an employee contact her employer and state that
> leave is needed as soon as practicable under the facts and circumstances of the
> particular case. An employee need not expressly assert rights under the FMLA or
> even mention the FMLA. Once an employee meets this low threshold, she is
> merely required to respond to reasonable employer inquiries for additional
> information.

*Id.* at 583 (citing 29 C.F.R. § 825.303(a)–(b)(2008)).  The *Saenz* Court gave particular

consideration to the fact that the plaintiff sought leave to care for herself for a serious medical

condition that would cause her to unexpectedly miss work, that her condition caused her to

undergo periods of incapacitation, and that her employer had abundant notice of the medical

condition for which she sought FMLA leave. *Id.* at 581–83.  Ultimately, the *Saenz* Court found

that there was a genuine issue of material fact and reversed the district court's grant of summary

judgment. *Id.* at 584.

Further, while an employer can set forth a policy under which employees request FMLA

leave, an employer's policy cannot conflict with the notice requirements set forth in the FMLA.

In *Mora v. Chem-Tronics, Inc.*, the Court focused its analysis on the purpose behind the FMLA,

which is to "allow workers flexibility in scheduling time to deal with family and medical

problems and alleviate some of the tension created by the competing demands of work and

family." 16 F. Supp. 2d 1192, 1199–1200 (S.D. Cal. 1998). *Mora* involved a similar (though

less burdensome) call-in procedure for employees to report unexpected absences, which required

at least 30 minutes notice prior to the employee's shift. *Id.* at 1216. The *Mora* Court found that

the FMLA's "as soon as practicable" standard controlled and held:

> This Court will not allow the Defendant to proceed with such a theory. The
> FMLA does not specify a particular time limit as to when an employee must call
> in and request FMLA leave, rather the FMLA mandates that such notice be "as
> soon as practicable." Defendant's policy which requires that an employee who
> will miss work call in one half an hour before his or her shift begins conflicts with
> the FMLA. The specific purpose of the Act is to deal with situations such as the

one presented in this case—a worker having to balance the needs of family and work and needing flexibility to deal with emergency family and medical problems. A company policy that does not allow for such flexibility nor recognize that in FMLA leave situations it may not be possible for an employee to call in one half and hour before a shift begins violates the employee's rights under the Act. Undoubtedly, an employer can establish its own policies for usual and customary notice for requesting general leave. But, such polices must defer to the FMLA when FMLA leave is appropriate.

Indeed, such a conclusion is supported by an example in § 825.303 which provides that: "An employer may also require an employee to comply with the employer's usual and customary notice and procedure requirements for requesting leave ... failure to follow such internal employer procedures will not permit the employer to disallow or delay an employee FMLA leave if the employee gives timely verbal or other notice." While this provision is directed towards foreseeable leave it does indicate that an employer may not deny FMLA to an employee who does not comply with internal policies and procedures, so long as he or she complies with the notice requirements of FMLA.

There is an even more compelling reason to afford an employee such flexib[ility] with unforeseeable leave because by definition the employee has even less time and more difficulty adhering to company policy given the exigency of the situation. Moreover, in the case of a medical emergency written advance notice pursuant to an employer's internal rules and procedures may not be required. While the Code does not mention verbal advance notice pursuant to an employer's internal rules, this Court does not see how and why any distinction should be made. Accordingly, the requirement under the FMLA that notice be "as soon as practicable" controls.

*Id.* at 1216–17 (quoting 29 C.F.R. §§ 825.302(d), 825.303(2008)).  The *Mora* Court went on to find that summary judgment was inappropriate, as the determination of whether notice was provided "as soon as practicable" was inherently a question of fact appropriate for a jury's determination. *Id.* at 1217.

Here, Mr. Acker provided notice to GM of his need for FMLA leave as soon as practicable. ***Exhibit A***, Acker Deposition at 28:17–29:6, 30:6–33:9, 102:25–103:4, 107:19–23 (App. 021–026, 072–075, 077); ***Exhibit M***, Acker Call Log at App. 146–149.  Mr. Acker indicates that his disability, acute iron-deficiency anemia, causes him to experience severe

disorientation, blackouts, grayouts, heart palpitations, and extreme fatigue when in the acute phase. *Exhibit A*, Acker Deposition at 9:14–12:2 (App. 010–013); *Exhibit J*, Plaintiff's Original Complaint at App. 126. Mr. Acker's disability can reach the acute phase suddenly and unexpectedly. *Exhibit A*, Acker Deposition at 30:6–33:9, 102:17–105:2 (App. 023–026, 072–075). While GM argues that Mr. Acker's symptoms cannot constitute exceptional or unusual circumstances, GM cites no authority for this proposition. Mr. Acker's disability could certainly constitute a sudden medical issue or emergency that would prevent Mr. Acker from contacting GM within the established time period. Further, determinations as to what constitutes notice given "as soon as practicable" and what is considered "unusual circumstances" are exactly the kind of fact questions that are appropriate for determination by a jury, which precludes a grant of summary judgment for GM. *See Lubke v. City of Arlington*, No. 4:02-CV-188-Y, 2003 WL 22466200, at *4 (N.D. Tex. Sept. 9, 2003) ("'Whether an employee has given adequate notice [of a serious health condition] is generally an issue of fact for the jury to decide.'") (quoting *De Hoyos v. Bristol Labs. Corp.*, 218 F. Supp. 2d 222, 226 (D.P.R. 2002)) (citing *Mora*, 16 F. Supp. 2d at 1209)).

In addition, GM requires its employees to use a procedure to request FMLA leave that subverts the purposes of the FMLA. *Exhibit A*, Acker Deposition at 103:5–104:3 (App. 103–104); *Exhibit G*, November 12, 2014 Notice of FMLA Claim at App. 107–108. GM employees are required to call two different automated 1-800 numbers, one of which is the GM Absence Call-In Line and one of which is the "GM Benefits & Services Center." *Exhibit A*, Acker Deposition at 103:5–104:3 (App. 103–104); *Exhibit G*, November 12, 2014 Notice of FMLA Claim at App. 107–108. Mr. Acker recalls never reaching a live person to discuss his leave requests and thus never received the opportunity to provide an explanation as to why his request

may be outside of the 30-minute call-in window in GM's policy. *Exhibit A*, Acker Deposition at

103:5–104:3 (App. 103–104); *Exhibit G*, November 12, 2014 Notice of FMLA Claim at App.

107–108. Further, while both of these numbers are labeled as "GM" 1-800 numbers, the "GM

Benefits & Services Center" is actually operated by GM's third-party leave administrator,

Sedgwick. *Exhibit A*, Acker Deposition at 103:5–104:3 (App. 103–104); *Exhibit G*, November

12, 2014 Notice of FMLA Claim at App. 107–108. Further, the menu options provided through

the automated 1-800 number used by Sedgwick were confusing at the time Mr. Acker initially

requested leave, and Mr. Acker's incorrect selection of menu options ultimately sresulted in a

number of his leave requests being denied by GM and its leave administrator. *Exhibit K*,

Executed EEOC Charge at App. 143–145. Mr. Acker recalls calling in to both 1-800 numbers,

and even if inferences are drawn in GM's favor and the Court concludes that Mr. Acker did not

call both numbers when initially requesting leave, Mr. Acker did more than enough to provide

GM with notice of his need for FMLA leave. *See Exhibit A*, Acker Deposition at 28:17–29:6,

30:6–33:9, 102:25–103:4, 107:19–23 (App. 021–026, 072–075, 077); *Exhibit M*, Acker Call Log

at App. 146–149.

Mr. Acker has provided evidence to raise a genuine issue of material fact regarding the

sufficiency of his notice of intent to take FMLA leave. Further, because the sufficiency of notice

provided by Mr. Acker is inherently a factual dispute appropriate for determination by a jury,

GM's Motion for Summary Judgment should be denied.

### 2. GM wrongfully denied several of Mr. Acker's FMLA leave requests, despite the fact that Mr. Acker provided sufficient notice of his intent to take FMLA leave.

Mr. Acker made a number of requests for FMLA leave as a result of his serious medical

condition from November 2014 to January 2015. *Exhibit A*, Acker Deposition at 28:17–29:6,

30:6–33:9, 102:25–103:4, 107:19–23 (App. 021–026, 072–075, 077); *Exhibit M*, Acker Call Log at App. 146–149. Mr. Acker received notice on at least one occasion that he was approved for intermittent FMLA leave and responded timely to any requests from GM or its FMLA leave administrator for physician certifications. *Exhibit H*, December 3, 2014 Notice of Conditional Approval at App. 113–116; *Exhibit I*, December 9, 2014 Notice of Approval of Intermittent Leave at App. 118–121. Mr. Acker was initially denied FMLA leave, despite qualifying for leave, for his leave requests from November 12–14, 2014; November 22–23, 2014; December 6, 2014; and December 8, 2014. Ultimately, GM's FMLA leave administrator's reversed course and ultimately approved Mr. Acker's November 12 and November 13 FMLA leave requests, recognizing its failure to properly process Mr. Acker's FMLA leave paperwork. *Exhibit A*, Acker Deposition at 46:8–59:16 (App. 033–046); *Exhibit K*, Executed EEOC Charge at App. 143–145. It would appear from GM's Motion for Summary Judgment that the alleged basis for the denial of these leave requests is Mr. Acker's alleged failure to "timely call the GM Absence Call-In Line and[/or] the GM Benefits & Services Center line." *See* Brief in Support of Defendant's Motion for Summary Judgment [Doc. 31] at pp. 9–11.

As discussed above, Mr. Acker's notice of intent to take FMLA leave was made to GM as soon as practicable and was thus sufficient under the FMLA. *See supra* Part III.A.1. As this appears to be the only basis for GM's denial of Mr. Acker's leave requests, Mr. Acker has presented a genuine issue of material fact concerning GM's interference with and denial of his FMLA rights. Accordingly, Defendant's Motion for Summary Judgment should be denied, since this issue is ripe for determination by a jury.

**3. GM's interference with and denial of Mr. Acker's exercise of his FMLA rights prejudiced Mr. Acker, as he was suspended from work and docked seven weeks of pay.**

It is undisputed that the absences associated with Mr. Acker's disciplinary layoff periods are absences for which Mr. Acker requested FMLA leave. *See* Brief in Support of Defendant's Motion for Summary Judgment [Doc. 31] at pp. 9–11. Mr. Acker's disciplinary layoff periods are directly attributed to Mr. Acker's requests for FMLA leave. *Exhibit A*, Acker Deposition at 46:8–59:16, 105:18–107:9 (App. 033–046, 075–077); *Exhibit B*, December 9, 2014 Report of Disciplinary Action at App. 084; *Exhibit C*, December 16, 2014 Report of Disciplinary Action at App. 088; *Exhibit D*, December 18, 2014 Report of Disciplinary Action; *Exhibit E*, January 14, 2015 Report of Disciplinary Action at App. 090. Mr. Acker lost approximately seven weeks of pay, including the regular overtime shifts Mr. Acker would frequently work. *Exhibit A*, Acker Deposition at 82:1–86:25, 106:15–107:9 (App. 067–071, 076–077); *Exhibit J*, Plaintiff's Original Complaint at App. 129; *Exhibit K*, Executed EEOC Charge at App. 143–145.

Economic harm is one form of prejudice an employee can experience as a result of his employer's interference with or denial of his exercise of his FMLA rights. *See Brock-Chapman v. Nat'l Care Network, L.L.C.*, No. 3:10-CV-454-B, 2013 WL 169177, at *8 (N.D. Tex. Jan. 16, 2013). In fact, the FMLA explicitly provides for the recovery of lost wages, benefits, or compensation caused by the employer's wrongful denial of FMLA leave. 29 U.S.C. § 2617.

Because Mr. Acker can present a genuine issue of material fact concerning the prejudice he experienced by GM's wrongful denial of his FMLA leave requests, the Court should deny Defendant's Motion for Summary Judgment.

B.    *The summary judgment evidence establishes a genuine issue of fact concerning Mr.
      Acker's FMLA and ADAAA retaliation claims, as GM subjected Mr. Acker to adverse
      employment actions, including several weeks of unpaid disciplinary layoff time,
      because of his exercise of his right to FMLA leave and his request for a reasonable
      accommodation for his disability in the form of FMLA leave.*

In addition to providing qualifying employees with protected leave, the FMLA also

prohibits an employer from discriminating against or retaliating against an employee who has

exercised his right to protected leave under the FMLA. 29 U.S.C. § 1615; *Haynes v.

Gernsbacher's, Inc.*, No. 4:01-CV-594-A, 2002 WL 1783905, at *5 (N.D. Tex. July 31, 2002)

(McBryde, J.) ("The FMLA supports two distinct potential causes of action. First, the FMLA

provides for a substantive right allowing a plaintiff to sue for damages if she is not allowed to

return to her previous position at the end of her FMLA qualifying leave. Second, the FMLA

makes it unlawful to retaliate against an employee for exercising her right to FMLA qualifying

leave.") (internal citations omitted)).  One method of showing retaliation under the FMLA is

using the *McDonnell Douglas* burden-shifting framework. *Holland v. Shinseki*, No. 3:10-CV-

0908-B, 2012 WL 162333, at *17 (N.D. Tex. Jan. 18, 2012) (citing *Hunt v. Rapides Healthcare

Sys., LLC*, 277 F.3d 757 (5th Cir. 2001)).

Under this method, Mr. Acker must first establish a *prima facie* case of retaliation:

> In order to establish a *prima facie* case of discrimination or retaliation under the
> FMLA, plaintiff must show: (1) he is protected under the FMLA; (2) he suffered
> an adverse employment decision; and (3) either (a) he was treated less favorably
> than an employee who had not requested leave under the FMLA or (b) the adverse
> decision was made because of plaintiff's request for leave.

*Schaub v. Tech Data Corp.*, No. 4:00-CV-0357-A, 2001 WL 238223, at *3 (N.D. Tex. Mar. 8,

2001) (McBryde, J.).

Likewise, the Americans with Disabilities Act Amendments Act prohibits retaliation

against an employee who has engaged in protected activity by opposing disability discrimination.

42 U.S.C. § 12203. "It is undisputed that making a request for a reasonable accommodation under the ADAAA may constitute engaging in a protected activity." *Tabatchnik v. Cont'l Airlines*, 262 F. App'x 674, 676 (5th Cir. 2008). The *prima facie* case for a retaliation claim under the Americans with Disabilities Act Amendments Act is functionally equivalent:

> To establish a prima facie case of retaliation under either the . . . ADA, a plaintiff must show (1) engagement in an activity protected by the ADA, (2) an adverse employment action, and (3) a causal connection between the protected act and the adverse action.

*Holland*, 2012 WL 162333, at *14. "When evaluating whether the adverse employment action was causally related to the FMLA protection, the court shall consider the 'temporal proximity' between the FMLA leave, and the [adverse employment decision]." *Mauder v. Metro. Transit Auth. of Harris Cnty., Tex.* 446 F.3d 574, 583 (5th Cir. 2006).

By adopting the Texas Commission on Human Rights Act into the Texas Labor Code, the Texas legislature intended to correlate state and federal anti-discrimination law. *See Autozone, Inc. v. Reyes*, 272 S.W.3d 588, 592 (Tex. 2008); *Quantum Chem. Corp. v. Toennies*, 47 S.W.3d 473, 476 (Tex. 2001); *M.D. Anderson Hosp. & Tumor Inst. v. Willrich*, 28 S.W.3d 22, 24 (Tex. 2000). Therefore, courts applying Texas anti-disability discrimination law may look to federal statutes and case law to interpret the requirements of the TCHRA. *See Reyes*, 272 S.W.3d at 592 (applying federal law in state law-based discrimination claim "to interpret the Act's provisions."); *Quantum Chem*, 47 S.W.3d at 476 ("[A]nalogous federal statutes and the cases interpreting them guide our reading of the TCHRA.").

Importantly, Mr. Acker's burden at the *prima facie* stage point is not onerous, and only a "low showing" is required to shift the burden to GM. *See Baker v. Am. Airlines, Inc.*, 430 F.3d

750, 754 (5th Cir. 2005); *Bauer v. Albermarle Corp.*, 169 F.3d 962, 967 (5th Cir. 1999); *see also*

*Gibson v. Swiss Reinsurance Am. Corp.*, Civ. A. No. 99-cv-2929-G, slip op. at 9 (N.D. Tex. May

7, 2001)(Doc. No. 67) (noting that it "is relatively easy... for a plaintiff to establish a *prima facie*

case") (quoting *Amburgey v. Cohart Refractories Corp., Inc.*, 936 F.2d 805, 811 (5th Cir. 1991)).

After all, *McDonnell Douglas* was "never intended to be rigid, mechanical, or ritualistic;" rather,

it is "merely a sensible, orderly way to evaluate the evidence in light of common experience as it

bears on the critical question of discrimination." *Furnco. Const. Co. v. Waters*, 438 U.S. 567,

577 (1978); *see also Tex. Dep't Comm. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)(noting that

burden of establishing *prima facie* case of disparate treatment is not onerous).

Once Mr. Acker makes this "low showing" and establishes a *prima facie* case of

retaliation, an inference of retaliation arises that GM must rebut to avoid liability. *Bauer*, 169

F.3d at 966. To do so, it must offer a legitimate, non-discriminatory reason for its actions. *Id.*

The purpose of this requirement, aside from rebutting the plaintiff's *prima facie* case, is to

"frame the factual inquiry with sufficient clarity so that the plaintiff will have a full and fair

opportunity to demonstrate pretext." *Tex. Dept. of Comm. Affairs v. Burdine*, 450 U.S. 248, 255–

56 (1981). If GM meets its burden, the burden shifts back to Mr. Acker to show that GM's

stated reason is a pretext for retaliation. *Schaub*, 2001 WL 238223, at *3.

The summary judgment evidence shows that Mr. Acker's requests for FMLA leave as a

reasonable accommodation for his disability was the sole motivation for GM's actions in this

case, namely punishing Mr. Acker with several weeks of disciplinary layoff time. Accordingly,

GM's Motion for Summary Judgment should be denied, as this case is ripe for determination by

a jury.

**1. Mr. Acker engaged in protected activity under the ADAAA and the Texas Labor**

**Code by requesting a reasonable accommodation for his disability in the form of medical leave.**

After Mr. Acker was diagnosed with his disability, acute iron-deficiency anemia, he promptly sought a reasonable accommodation for his disability in the form of intermittent FMLA leave. *Exhibit A*, Acker Deposition at 30:6–33:9, 102:17–105:2 (App. 023–026, 072–075). "It is undisputed that making a request for a reasonable accommodation under the ADAAA may constitute engaging in a protected activity." *Tabatchnik v. Cont'l Airlines*, 262 F. App'x 674, 676 (5th Cir. 2008). Further, Mr. Acker did not have to use the phrase "reasonable accommodation" or invoke the ADAAA in order to convey to GM has he was requesting a reasonable accommodation for his disability in the form of FMLA leave:

> The employee must explain that the adjustment in working conditions or duties she is seeking is for a medical condition-related reason, but the employee does not have to mention the ADA or use the phrase "reasonable accommodation." Plain English will suffice.

*E.E.O.C. v. Chevron Phillips Chem. Co., L.P.*, 570 F.3d 606, 621 (5th Cir. 2009).

A request for medical leave can constitute a request for reasonable accommodation. *See id.* at 623. Further, Mr. Acker notified GM of his disability prior to his requests for FMLA leave, as the issue was discussed with GM prior to Mr. Acker's requests for medical leave and/or FMLA leave. *Exhibit A*, Acker Deposition at 30:6–33:9, 102:17–105:2 (App. 023–026, 072–075). Accordingly, Mr. Acker has engaged in protected activity under the FMLA, and GM's Motion for Summary Judgment should be denied.

**2. GM subjected Mr. Acker to adverse employment actions when he was placed on approximately seven weeks of unpaid, disciplinary layoff time.**

It is well settled that an employment action does not have to be a so-called "ultimate" employment action, such as a termination, to constitute an adverse employment action. *Haire v.*

*Bd. of Supervisors of La. State Univ. Agric. & Mech. Coll.*, 719 F.3d 356, 367–68 (5th Cir.

2013). Disciplinary actions or reprimands constitute adverse employment actions in the

retaliation context. *Breaux v. City of Garland*, 205 F.3d 150, 157 (5th Cir. 2000). A suspension

without pay (called disciplinary layoff by GM) also constitutes an adverse employment action in

an FMLA retaliation case. *McGarity v. Mary Kay Cosmetics*, No. 3:96-CV-3413-R, 1998 WL

50460, at *5 (N.D. Tex. Jan. 20, 1998).

In this case, Mr. Acker suffered adverse employment actions with each

disciplinary action he received from GM that was associated with dates for which he sought

FMLA leave. *Exhibit A*, Acker Deposition at 46:8–59:16, 105:18–107:9 (App. 033–046, 075–

077); *Exhibit B*, December 9, 2014 Report of Disciplinary Action at App. 084; *Exhibit C*,

December 16, 2014 Report of Disciplinary Action at App. 088; *Exhibit D*, December 18, 2014

Report of Disciplinary Action; *Exhibit E*, January 14, 2015 Report of Disciplinary Action at

App. 090. As a result of the disciplinary leave and reprimands assessed against Mr. Acker, he

has been advanced to the final disciplinary step in GM's progressive discipline process, which is

termination. *Exhibit A*, Acker Deposition at 46:8–59:16, 105:18–107:9 (App. 033–046, 075–

077); *Exhibit B*, December 9, 2014 Report of Disciplinary Action at App. 084; *Exhibit C*,

December 16, 2014 Report of Disciplinary Action at App. 088; *Exhibit D*, December 18, 2014

Report of Disciplinary Action; *Exhibit E*, January 14, 2015 Report of Disciplinary Action at

App. 090; *Exhibit F*, Memorandum of Understanding – Special Procedures for Attendance at

App. 093–100. Further, Mr. Acker lost approximately seven weeks of pay, including overtime

opportunities, as a result of the disciplinary layoff periods. *Exhibit A*, Acker Deposition at 82:1–

86:25, 106:15–107:9 (App. 067–071, 076–077); *Exhibit J*, Plaintiff's Original Complaint at

App. 129; *Exhibit K*, Executed EEOC Charge at App. 143–145. Mr. Acker has certainly

experienced adverse employment actions for purposes of his FMLA retaliation claim. Accordingly, GM's Motion for Summary Judgment should be denied.

### 3. GM placed Mr. Acker on approximately seven weeks of unpaid, disciplinary layoff time because of his exercise of his FMLA rights and his request for a reasonable accommodation for his disability in the form of FMLA leave.

Mr. Acker can establish a causal connection between the adverse action at issue and his exercise of his rights under the FMLA because the sole reason GM placed Mr. Acker on disciplinary layoff was his absences for dates for which he requested and was denied FMLA leave. *See* Brief in Support of Defendant's Motion for Summary Judgment at pp. 9–11. Further, GM placed Mr. Acker on disciplinary layoff within one month or less of his FMLA leave requests, which were wrongfully denied by GM. *Exhibit A*, Acker Deposition at 46:8–59:16, 105:18–107:9 (App. 033–046, 075–077); *Exhibit B*, December 9, 2014 Report of Disciplinary Action at App. 084; *Exhibit C*, December 16, 2014 Report of Disciplinary Action at App. 088; *Exhibit D*, December 18, 2014 Report of Disciplinary Action; *Exhibit E*, January 14, 2015 Report of Disciplinary Action at App. 090. A period of one month or less between the adverse action at issue and the plaintiff's protected activity is sufficient to establish a causal connection for purposes of establishing a *prima facie* case of retaliation. *Schirle v. Sokudo USA, L.L.C.*, 484 F. App'x 893, 899 (5th Cir. 2012).

Because Mr. Acker properly requested FMLA leave and was punished shortly thereafter, as discussed in further detail above, Mr. Acker can establish a causal connection between his exercise of his FMLA rights and the disciplinary layoff period assessed against him by GM. As a result, Mr. Acker has established a *prima facie* case of retaliation under the FMLA, and summary judgment should be denied.

**4. The reason provided by GM for the adverse actions taken against Mr. Acker are pretextual, as the sole justification provided by GM for the disciplinary layoff periods assessed against Mr. Acker is GM's claim that Mr. Acker failed to comply with GM's call-in procedure, which disregards Mr. Acker's timely and adequate notification to GM of his need for FMLA leave.**

As discussed previously, Mr. Acker complied with the requirements of the FMLA, the ADAAA and TCHRA in requesting medical leave and a reasonable accommodation for his disability. *See supra* Part IV.A.1–2, B.1. GM expressly states that the reason for its punishment of Mr. Acker for dates for which he requested FMLA leave was Mr. Acker's alleged failure to follow GM's complicated call-in procedure. *See* Brief in Support of Defendant's Motion for Summary Judgment at pp. 9–11.

However, the question of whether GM was justified in finding that Mr. Acker failed to comply with the FMLA's requirements is a question of fact for the jury, as a jury is best situated as fact-finder to determine whether the facts and circumstances establish that Mr. Acker gave notice "as soon as practicable" under the FMLA. Because a reasonable jury could find that Mr. Acker complied with the FMLA's notice requirement, provided GM with notice of his intent to take FMLA leave, and requested a reasonable accommodation in the form of medical leave in a timely fashion, Defendant's Motion for Summary Judgment should be denied.

**C.** *A jury could find in Mr. Acker's favor on his disability discrimination claims, as GM took adverse action against him in the form of unpaid disciplinary layoff periods because of his disability in violation of the ADAAA and the TCHRA.*

The Americans with Disabilities Act Amendments Act prohibits discrimination against employees on the basis of disability. 42 U.S.C. § 12112. The prima facie elements of a disability discrimination claim are that (1) Plaintiff has a disability, (2) he is qualified for the job, and (3) the employer made its adverse employment decision because of the plaintiff's disability. *See Neely v. PSSEG Tex., Ltd. P'ship*, 735 F.3d 242, 245 (5th Cir. 2013).

By adopting the Texas Commission on Human Rights Act into the Texas Labor Code, the Texas legislature intended to correlate state and federal anti-discrimination law. *See Reyes*, 272 S.W.3d at 592; *Quantum Chem. Corp.*, 47 S.W.3d at 476; *M.D. Anderson Hosp. & Tumor Inst.*, 28 S.W.3d at 24. Therefore, courts applying Texas anti-disability discrimination law may look to federal statutes and case law to interpret the requirements of the TCHRA. *See Reyes*, 272 S.W.3d at 592 (applying federal law in state law-based discrimination claim "to interpret the Act's provisions."); *Quantum Chem. Corp.*, 47 S.W.3d at 476 ("[A]nalogous federal statutes and the cases interpreting them guide our reading of the TCHRA.").

Like with Mr. Acker's retaliation claims under the FMLA, ADAAA, and Texas Labor Code, the *McDonnell-Douglas* analytical framework applies to a claim for disability discrimination. *See supra* Part IV.B. GM does not dispute that Mr. Acker meets the first two elements of his *prima facie* case. *See* Brief in Support of Defendant's Motion for Summary Judgment at p. 23 n.2.

As discussed above, GM's motivation for punishing Mr. Acker with periods of unpaid disciplinary layoff, which constitutes an adverse employment action for purposes of the ADAAA and the TCHRA, was Mr. Acker's report to Defendant of his disability and his need for a reasonable accommodation in the form of medical leave. *See supra* Part IV.B. The disciplinary layoff assessed against Mr. Acker by GM came just one month after Mr. Acker first reported his disability to GM. ***Exhibit A***, Acker Deposition at 46:8–59:16, 105:18–107:9 (App. 033–046, 075–077); ***Exhibit B***, December 9, 2014 Report of Disciplinary Action at App. 084; ***Exhibit C***, December 16, 2014 Report of Disciplinary Action at App. 088; ***Exhibit D***, December 18, 2014 Report of Disciplinary Action; ***Exhibit E***, January 14, 2015 Report of Disciplinary Action at App. 090. Further, as previously discussed, the dates for which Mr. Acker received disciplinary

layoff time were all associated with requests made by Mr. Acker for a reasonable accommodation and medial leave. *Exhibit A*, Acker Deposition at 46:8–59:16, 105:18–107:9 (App. 033–046, 075–077); *Exhibit B*, December 9, 2014 Report of Disciplinary Action at App. 084; *Exhibit C*, December 16, 2014 Report of Disciplinary Action at App. 088; *Exhibit D*, December 18, 2014 Report of Disciplinary Action; *Exhibit E*, January 14, 2015 Report of Disciplinary Action at App. 090.

Ultimately, Mr. Acker complied with the requirements of the FMLA in requesting medical leave as an accommodation for his disability by providing notice to GM "as soon as practicable." Because the FMLA's requirements trump GM's to the extent GM's call-in procedures exceed the notice required under the FMLA, GM incorrectly denied Mr. Acker a reasonable accommodation in the form of medical leave and punished Mr. Acker because of his disability as a result.

Because Mr. Acker has raised a genuine issue of material fact concerning all of his claims, GM's Motion for Summary Judgment should be denied, and this case should proceed to a jury trial.

**D.** *Summary judgment is improper where, when viewing all evidence and finding all inferences in Mr. Acker's favor, material factual disputes exist.*

Federal Rule of Civil Procedure 56 should be construed "with due regard [...] for the rights of persons asserting claims adequately based in fact to have those claims and defenses tried to a [finder of fact]...." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). The Fifth Circuit has cautioned that summary judgment is a "potent weapon" and that "courts must be mindful of its aims and targets and beware of overkill in its use." *Findeisen v. N.E. Indep. Sch. Dist.*, 749 F. 2d 234, 239 (5th Cir. 1984), *cert. denied*, 471 U.S. 1125 (1985)(internal quotations omitted).

Summary judgment is appropriate only where the record contains no genuine issue as to any material fact so that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A genuine issue of material fact exists "if the evidence is such that a reasonable [trier of fact] could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

GM, as the moving party, bears the initial burden of showing its entitlement to judgment as a matter of law. *Celotex Corp.*, 477 U.S. at 323. This burden is not met with the conclusory assertion that probative evidence does not exist. Rather, GM must show—through competent evidence—the absence of genuine material fact issues and that it is entitled to judgment as a matter of law. *Hall v. Smurfit-Stone Container Enter., Inc.*, Civ. A. No. 3:07-CV-0501-G, 2008 WL 3823252, at *2 (N.D. Tex. Aug. 14, 2008). If GM meets that burden, Mr. Acker then must point to record evidence demonstrating the existence of material factual disputes. *Id.* As long as "reasonable minds could differ as to the import of the evidence," such that factual disputes remain, the motion for summary judgment must be denied. *Anderson*, 477 U.S. at 250.

In *Reeves v. Sanderson Plumbing Products, Inc.*, the Supreme Court unanimously confirmed the standard that courts must follow in evaluating motions for summary judgment. 530 U.S. 133 (2000). *Reeves* and earlier precedent instruct the Court to accept Mr. Acker's evidence as true and draw all reasonable inferences in his favor. *Id.* at 150-151; *Anderson,* 477 U.S. at 255.

Meanwhile, the Court should avoid making credibility determinations in light of conflicting evidence or competing inferences. *Anderson*, 477 U.S. at 255. For "credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts" are functions of the fact-finder at trial, not those of a judge in ruling as a matter of law.

*Reeves*, 530 U.S. at 150–151. Courts therefore must tread cautiously on summary judgment in cases turning on complex issues of intent and motive, such as discrimination and retaliation matters. *See Poller v. Columbia Broadcasting Sys., Inc.*, 368 U.S. 464, 473 (1962)(internal quotation omitted). In these cases, "trial by affidavit is no substitute" for trial because:

> the proof is largely in the hands of the alleged conspirators, and hostile witnesses thicken the plot. It is only when the witnesses are present and subject to cross-examination that their credibility and the weight to be given their testimony can be appraised.

*Id.; see also Thornbrough v. Columbus & Greenville R.R. Co.*, 760 F.2d 633, 640 (5th Cir. 1985), *abrogated on other grounds by St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502 (1993)(commenting that summary judgment is an improper tool in discrimination cases, which involve "nebulous questions of motivation and intent.").

## V.
## CONCLUSION

WHEREFORE, PREMISES CONSIDERED, Mr. Acker prays this Court deny Defendant's Motion for Summary Judgment because he has raised genuine issues of material fact regarding his FMLA interference, FMLA retaliation, and disability discrimination and retaliation claims.

Respectfully submitted,

Robert J. Wiley
Texas Bar No. 24013750
*Board Certified – Labor and Employment Law –*
*Texas Board of Legal Specialization*
Allison C. Reppond
Texas Bar No. 24085733

ROB WILEY, P.C.
1825 Market Center Blvd., Ste. 385

Dallas, Texas 75207
Telephone: (214) 528-6500
Facsimile:  (214) 528-6511
areppond@robwiley.com
www.robwiley.com

### CERTIFICATE OF SERVICE

I hereby certify that on June 14, 2016, this document was filed by hand-delivery to the Clerk of Court, who will transmit a Notice of Electronic Filing to all counsel of record in this matter.

_____
Allison C. Reppond